### Eleazer O'Kelly & others *vs.* Browning O'Kelly.

Though the evidence for the plaintiff may be very strong, and the evidence for the
defendant very slight, yet the court should not rule that the evidence is wholly insuf-
ficient to support the defence.  If there be any evidence bearing on the matter o₁
defence set up, it should be submitted to the consideration of the jury.

A. executed and acknowledged a deed conveying land to B., but retained it in his own
custody until within a few months before his death, when he directed his daughter.
C. to advise with D. as to the delivery of it, saying that it was a good deed, as he nad

O'Kelly & others *v.* O'Kelly.

been informed by counsel, and then delivered it to C., to be delivered by her, after his death, to B., if he behaved well: After A.'s death, E., C.'s daughter, delivered the deed to B.: In a suit against B., to try the title to the land described in the deed, he called E. as a witness, and she testified that A., shortly before his death, handed the deed to her, but gave her no instructions or directions to deliver it to any one; that no third person was present when the deed was so handed to her; and that she delivered it to B. shortly after A.'s death: B. thereupon offered to prove that, when E. delivered the deed to him, she said, " here are the papers which grandfather gave me to deliver to you." *Held,* that evidence of such declaration by E. was inadmissible.

PETITION FOR PARTITION. The petitioners, except Barrett Beard, claimed as heirs at law of Browning O'Kelly, late of Dartmouth, who died intestate. The said Beard claimed by purchase from the other heirs of the said deceased. The respondent denied the seizin of the petitioners, and alleged that he was sole seized. Trial in the court of common pleas, before *Merrick,* J. whose report thereof was as follows:

The respondent admitted that the petitioners, except said Beard, were heirs at law of said intestate, and that, if they were entitled to partition, they were entitled to the respective shares which they claimed in their petition. Satisfactory evidence was introduced, to prove that said Beard was possessed, by purchase, of two twenty eighth parts of the premises described in the petition; and that said Browning O'Kelly, the intestate, died on or about the 25th of September 1841.

The respondent, in support of his claim of sole seizin, offered in evidence a deed of the premises aforesaid, dated September 18th 1838, purporting to be executed by said intestate, and conveying said premises to the respondent. He called John Nickerson, as a witness, to prove the execution of that deed, who testified that he wrote the deed at the request of the intestate, who was his grandfather, in the intestate's house, and that the deed was signed and acknowledged by the intestate; that after the deed was executed, he delivered it to the intestate, and left it with him; that about three months before the death of the intestate, the witness, and Polly Briggs, a daughter of the intestate, were at his house, and in a room with him; that the intestate then gave directions as to the delivery of this deed, and of other writings which were then executed

by him; that the intestate directed his said daughter to advise with the witness as to the delivery of them, and said the witness would know best which to give up: That the intestate then said, "that deed" (referring to the deed under which the respondent claims) "is good; I have consulted with a lawyer in New Bedford, who informed me that the deed was good:" That this deed, up to that time, had been in the possession of said Polly Briggs; and the intestate having inquired where it was, the witness, on being informed by said Polly, went, at the request of the intestate, and brought it into the room where the aforesaid conversation was had, and the aforesaid directions were given, and handed it to the intestate, who delivered it to his said daughter, Polly Briggs, with directions to advise with the witness, and to give it to the respondent after the intestate's death, if he behaved well. The witness further testified that the said Polly never did advise with him.

The respondent then called Amy Baker, a granddaughter of the intestate, and daughter of said Polly Briggs, who testified that, four or five weeks before her grandfather's death, he handed said deed to her; that she carried it home to her house and kept it, and that, about four weeks after the intestate's death, she delivered it to the respondent; that the intestate gave her no instructions or directions to deliver the deed to any one, and that no third person was present when she received it from him.

The respondent then offered to prove, that when the last witness delivered the deed to him, she said, "here are the papers which grandfather gave me to deliver to you." This evidence was rejected by the court.

The respondent contended that the evidence, which was received, was sufficient to establish the deed; that the direction given to Polly Briggs, to deliver the deed, was sufficient to pass the title; and that the taking of the deed from Polly Briggs, afterwards, and giving it to her daughter, Amy Baker, was no revocation of the authority to deliver it, and did not retract, thereby, the grant; that the question of intent was proper for the jury; and that no presumptions of law were raised by these

acts. But the court ruled that the evidence was wholly insufficient to establish the grant, and a verdict was returned for the petitioners. The respondent alleged exceptions to the ruling of the court.

The argument was had at the last October term.

*Coffin*, for the respondent.

*O. Prescott*, for the petitioners.

SHAW, C. J. This case comes before the court from the court of common pleas, by exceptions. The question was, whether Browning O'Kelly, the ancestor of the parties, executed and delivered a deed, in his life time, to the respondent, one of his sons, by which he gave to him the estate of which partition is now prayed. That a deed was made, executed and acknowledged by the ancestor, was proved. The question was, whether it was delivered so as to take effect and pass the estate. If it was delivered by the grantor to any person, in his life time, to be delivered to the grantee after his decease, it was a good delivery, upon the happening of the contingency, and related back so as to divest the title of the grantor, by relation, from the first delivery. *Foster* v. *Mansfield*, 3 Met. 412. But the fact of delivery is a question for the jury. If there is any evidence to go to the jury, it is not competent for the court to withdraw it from them ; and the court cannot pass upon the weight or sufficiency of the evidence. It is highly probable that, upon the evidence, a jury must come to the same result which the judge did ; because, though the evidence tended to show that Polly Briggs was authorized to deliver the deed, upon a certain contingency, yet that she never executed that authority ; and other evidence tended to show that Amy Baker, after the decease of the grantor, handed the deed over to the grantee, yet that she had no authority to do so. Still the question of delivery depends on an act done, and the intent with which it is done. Here the deed was in fact handed by the grantor, in his life time, to Amy Baker, or to some person from whom she received it. If that was done with an intent that it should be delivered to the grantee, it might make it a good delivery. We are of opinion, that there was some evidence bearing on the question of intent, for the con

sideration of a jury. And though the evidence tending to show any intimation of the ancestor's intent that Amy Baker should deliver the deed without further authority from him, was very slight, and although the evidence tending to negative any such intent was very strong, yet it was for the jury, and not the court, to draw the inference. We think the evidence should have been left to the jury, with directions, that if the grantor, in his life time, handed the deed to Amy Baker, and accompanied it with any expression of his intent that, after his decease, she should deliver it to the respondent, and she did so, it was a good delivery to give effect to the deed; but if he handed it to her to keep, and gave no authority to deliver it, it could not operate as a deed.

As to the evidence offered, that Amy Baker, when she delivered the deed to the respondent, said, " here are the papers which grandfather gave me to deliver to you," we think it was rightly rejected. In the first place, it is very clear that it could not be offered to impeach the witness by contradicting her ; because she was his own witness. Then it is argued that it was competent to prove it, as words accompanying an act, and part of the *res gestæ*. But in considering this rule, we must make the true distinctions. It is not every thing that is said at the time of doing an act, which is admissible, but only words that qualify and give character and effect to the act ; such as show the motive or object, purpose or intent, with which it was done. When words are thus admissible, they may be proved, by any person who heard them, as facts, whether the witness who is alleged to have used them recollects them, and can testify to them, or not. For instance ; if the offer had been to prove that, when she handed the deed to the respondent, she had said, " I hand you this deed to be destroyed and cancelled," or, " I hand you this deed as your own," though she could not recollect it, and did not testify to it, it would have been admissible, and would show that, so far as she had power to act, the delivery in the former case would render the deed inoperative and void, and in the latter good. But the offer of proof went further, and was intended to show, as an independ-

ent fact, that she had been authorized by her grandfather to deliver the deed ; a fact to which she does not testify under oath. Now this fact of authority was independent of her act of delivery.

Had any person been present when her grandfather delivered the deed to her, and would testify that he authorized her to deliver it after his decease, I think it would be competent evidence, although she had testified that, when he delivered the deed to her, he said nothing. It would, indeed, be inconsistent with her testimony, and therefore, in that particular, would contradict her ; but, not being offered for that purpose, it would not be objectionable, if there was another legitimate purpose for which it might have been offered. And we think there was such an object, viz. to prove the fact of authority, from the grantor to her, to deliver the deed after his death ; a fact within the issue, and proveable by any competent evidence. Nor is it secondary evidence ; nor would it be objectionable on the ground that the testimony of Amy Baker would be better evidence. But the true reason why the evidence offered was rightly objected to is, that it was hearsay. It was offering a witness to prove that he had heard Amy Baker state a fact, which she does not state on oath, and thereby to make her statement evidence of the fact stated by her not on oath. The objection is just the same, in this respect, as if she had not been called as a witness. In that case, it would have been competent for the respondent to prove by one witness that she had delivered the deed to him, and to prove by another that the grantor had authorized her so to do, and thus make out both parts of his case. But no witness would be permitted to testify, that Amy Baker had stated either of the facts to him ; because it would be hearsay, and not evidence under oath.

*New trial granted.*